UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

| | |
|---|---|
| ALLON YARONI, Individually and On Behalf of All Others Similarly Situated, | : 20-cv-8062 (JMF) |
| | : |
| Plaintiff, | : **ECF Case** |
| | : **Electronically Filed** |
| v. | : |
| | : **ORAL ARGUMENT** |
| PINTEC TECHNOLOGY HOLDINGS LIMITED, WEI WEI, STEVEN YUAN NING SIM, JUN DONG, JING ZHOU, XIAOMEI PENG, CHAO ZHOU, FENG HONG, JIACHENG LIU, GOLDMAN SACHS (ASIA) L.L.C., DEUTSCHE BANK SECURITIES INC., and CITIGROUP GLOBAL MARKETS INC., | : **REQUESTED** |
| | : |
| Defendants. | : |

------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | GOODWIN PROCTER LLP |
| | Douglas H. Flaum |
| Scott D. Musoff | Molly L. Leiwant |
| Robert A. Fumerton | 620 Eighth Avenue |
| Michael C. Griffin | New York, New York 10018 |
| One Manhattan West | Telephone: (212) 813-8800 |
| New York, New York 10001 | |
| Telephone: (212) 735-3000 | *Attorneys for Defendants Goldman Sachs (Asia) L.L.C., Deutsche Bank Securities Inc. and Citigroup Global Markets Inc.* |
| *Attorneys for Defendant Pintec Technology Holdings Limited* | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ......................................................................................................................................... 2

I.     VIRTUALLY ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED ........................... 2

II.    PLAINTIFF FAILS TO ALLEGE A MATERIAL MISREPRESENTATION ................. 4

        A.     Pintec Disclosed The Relevant Internal Controls Risks ........................................... 4

        B.     Pintec Disclosed Its Cash Advances To Jimu ............................................................ 6

        C.     Pintec Had No Duty To Disclose The Plutux Loan .................................................. 7

        D.     Plaintiff Fails To Allege A Misrepresentation Regarding Revenue Recognition .... 7

        E.     Plaintiff Fails To Plead Other Financial Statements Were Misleading ................... 9

III.   LACK OF CAUSATION IS APPARENT ON THE FACE OF THE COMPLAINT ...... 10

CONCLUSION ................................................................................................................................... 10

# **TABLE OF AUTHORITIES**

## **CASES**

*Altayyar v. Etsy, Inc.*,
   242 F. Supp. 3d 1617 (E.D.N.Y. 2017), *aff'd*, 731 F. App'x 35 (2d Cir. 2018)..............5, 6

*Amorosa v. AOL Time Warner Inc.*,
   409 F. App'x 412 (2d Cir. 2011) .......................................................................................2

*Amorosa v. Ernst & Young LLP*,
   672 F. Supp. 2d 493 (S.D.N.Y. 2009).............................................................................10

*In re AmTrust Financial Services, Inc. Securities Litigation*,
   No. 17-CV-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019).........................8, 9

*In re AmTrust Financial Services, Inc. Securities Litigation*,
   No. 17-CV-1545 (LAK), 2020 WL 2787117 (S.D.N.Y. Apr. 20, 2020)............................8

*In re Atlas Air Worldwide Holdings, Inc. Securities Litigation*,
   324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................................8

*City of Pontiac General Employees' Retirement System v. MBIA, Inc.*,
   637 F.3d 169 (2d Cir. 2011)...............................................................................................2

*Coronel v. Quanta Capital Holdings Ltd.*,
   No. 07 CIV. 1405 (RPP), 2009 WL 174656 (S.D.N.Y. Jan. 26, 2009)..............................5

*In re Coty Inc. Securities Litigation*,
   No. 14-CV-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)...............................7

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)...............................................................................................9

*FDIC v. Countrywide Financial Corp.*,
   No. 12-CV-4354 (MRP), 2012 WL 5900973 (C.D. Cal. Nov. 21, 2012) .........................3

*Fresno County Employees' Retirement Association v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)................................................................................8

*Goldsmith v. Weibo Corp.*,
   C.A. No. 17-4728 (SRC), 2018 WL 2733694 (D.N.J. June 7, 2018) ................................7

*Horowitz v. Sunlands Technology Group*,
   No. 19-CV-3744 (FB) (SMG), 2021 WL 1224517 (E.D.N.Y. Mar. 31, 2021)...............2, 4

*Lachman v. Revlon, Inc.*,
   487 F. Supp. 3d 111 (E.D.N.Y. 2020) ...............................................................................5

*In re Magnum Hunter Resource Corp. Securities Litigation*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015)....................4

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
    65 F.3d 1044 (2d Cir. 1995)........................................................................................10

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010).....................................................................................................2

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014)........................................................................................4

*Monroe County Employees' Retirement System v. YPF Sociedad Anonima*,
    15 F. Supp. 3d 336 (S.D.N.Y. 2014)...........................................................................3

*FHFA v. Nomura Holding America, Inc.*,
    873 F.3d 85 (2d Cir. 2017)..........................................................................................2

*Nurlybayev v. ZTO Express (Cayman) Inc.*,
    No. 17 CV 6130-LTS-SN, 2021 WL 1226865 (S.D.N.Y. Mar. 31, 2021).........................4

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015).....................................................................................................8

*Panther Partners, Inc. v. Ikanos Communications, Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008).........................................................................5

*Public Employees' Retirement System of Mississippi v. Merrill Lynch & Co.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010).........................................................................4

*Schuler v. NIVS Intellimedia Technology Group, Inc.*,
    No. 11 Civ. 2484 (KMW) (FM), 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ................10

*In re Scottish Re Group Securities Litigation*,
    524 F. Supp. 2d 370 (S.D.N.Y. 2007).........................................................................4

*Slayton v. American Express Co.*,
    604 F.3d 758 (2d Cir. 2010)........................................................................................4

*In re Time Warner Inc. Securities Litigation,*
    9 F.3d 259 (2d Cir. 1993).........................................................................................7, 8

*In re UBS AG Sec. Litig.*,
    07 CIV. 11225 (RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub
    nom. City of Pontiac Policemen's & Firemen's Retirement System v. UBS A*G,
    752 F.3d 173 (2d Cir. 2014)........................................................................................6

*In re Veeco Instruments, Inc. Securities Litigation*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ..................................................................................8

*In re XP Inc. Securities Litigation*,
    No. 20-CV-1502 (BMC), 2021 WL 861917 (E.D.N.Y. Mar. 8, 2021) ...............................9

*Yi Xiang v. Inovalon Holdings, Inc.*,
    254 F. Supp. 3d 635 (S.D.N.Y. 2017)...........................................................................2

**STATUTES**

15 U.S.C. § 77m.................................................................................................................2

**REGULATIONS**

17 C.F.R. § 229.303 ..........................................................................................................6

**PRELIMINARY STATEMENT**

Plaintiff's claims cannot survive under any plausible reading of his Complaint. Per his own allegations, either Pintec's 2018 Annual Report[1] (issued in July 2019) revealed material misrepresentations in the Offering Documents, in which case Plaintiff's claims are time-barred, or the 2018 Annual Report did not reveal any material misrepresentations, in which case negative causation defeats Plaintiff's claims. Unable to resolve this impasse, Plaintiff flip-flops and contradicts himself, and in doing so, pleads himself out of court under several independent theories.

First, the plain language of the Securities Act forecloses Plaintiff's attempts to circumvent the one-year statute of limitations. The Securities Act provides that the limitations period begins to run upon "discovery of the untrue statement or the omission." Because most of the alleged misrepresentations were, by Plaintiff's own admissions, first disclosed in the 2018 Annual Report, more than a year before the initiation of this action, those claims are now time-barred.

Second, Plaintiff fails to allege a material misrepresentation. Regarding the internal controls issues, Pintec either clearly disclosed them in the Offering Documents or had no legal duty to disclose them at all. Moreover, in his Opposition, not only does Plaintiff abandon his claim regarding the Plutux loan, but, in attempting to salvage his time-barred claims, concedes that the alleged omissions about Jimu were not material at the time of the IPO. Plaintiff also cannot point to anything in the Company's June 2020 disclosures—published almost two years after the IPO—to show that anything in the Offering Documents was false or misleading.

Finally, Plaintiff's claims fail for lack of causation, as Pintec's ADS price *increased* when the 2018 Annual Report was issued, and Plaintiff sold his shares prior to the June 2020 disclosures.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss ("Opening Brief" or "Br.") (ECF No. 33). "Opposition" or "Opp." refers to the Memorandum of Law in Opposition to Defendants' Joint Motion to Dismiss (ECF No. 38). All citations and internal quotations marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

**ARGUMENT**

I.      **VIRTUALLY ALL OF PLAINTIFF'S CLAIMS ARE TIME-BARRED**

Plaintiff does not and cannot dispute that Pintec's 2018 Annual Report—which disclosed the allegedly omitted internal control issues relating to the Jimu and Plutux transactions—was filed on July 30, 2019, over one year before this action commenced. (Opp. at 11; AC ¶¶ 180–85.) All claims based on these issues are thus barred by Section 11's one-year statute of limitations. Plaintiff tries to escape this ineluctable conclusion with three meritless arguments.

First, he insists that the statute of limitations does not begin to run until a shareholder can "plead a viable §11 claim," and that his claims did not accrue until the June 2020 disclosures provided additional context necessary to plead materiality. (Opp. at 12.) This is not the law. The Securities Act states that the limitations period commences upon actual or constructive "discovery of the untrue statement or the omission." 15 U.S.C. § 77m. "[T]he corrective disclosure date is the same as the constructive notice date for purposes of limitations."[2] *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416–17 (2d Cir. 2011). Here, Plaintiff concedes that he had notice of the alleged omissions that form the basis of his claims on July 30, 2019, which triggered a duty to investigate the alleged misstatements and caused his claims to accrue. (*See* AC ¶¶ 180–85.)

In any event, Plaintiff's claims fail even under his own incorrect standard. Although he argues the 2018 Annual Report was insufficient to trigger the start of the limitations period, in seeking to avoid having his claim barred by negative causation, he concedes that the release of the

---

[2] None of Plaintiff's cited cases are to the contrary or even address this issue. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 649 (2010) (discovery of scienter necessary to trigger the *Exchange Act's* limitations period); *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 174 (2d Cir. 2011) (similar); *FHFA v. Nomura Holding Am., Inc.*, 873 F.3d 85, 119 & n.37 (2d Cir. 2017) (courts may assume when duty to investigate misstatements is triggered based on when reasonable plaintiff is put on inquiry notice); *Horowitz v. Sunlands Tech. Grp.*, No. 19-CV-3744 (FB) (SMG) 2021 WL 1224517, at *2 (E.D.N.Y. Mar. 31, 2021) (evaluating if Chinese articles alerted U.S. investors to misstatement); *Yi Xiang v. Inovalon Hldgs., Inc.*, 254 F. Supp. 3d. 635, 641, 643 (S.D.N.Y. 2017) (company disclosed tax increase but not expected impact on earnings).

2

2018 Annual Report "had at least *some* market effect causing a decline in Pintec stock." (Opp. at 23.) But he cannot have it both ways. If the 2018 Annual Report had a "market effect," it triggered the start of the one-year statute of limitations, which bars his untimely claims. But if the "truth" did not come out until June 2020—a theory that also does not help Plaintiff, as he had sold all his shares by then—his claims based on the 2018 Annual Report fail for lack of causation.

Second, Plaintiff argues that the limitations period did not begin to run until the June 2020 disclosures purportedly alerted investors to credit losses attributable to Jimu's insolvency. (Opp. at 12.) But the law is clear that the limitations period begins to run "at the same time the alleged misrepresentations [come] to light, not at the time the risk actually materialize[s]."[3] *FDIC v. Countrywide Fin. Corp.*, No. 12-CV-4354 (MRP), 2012 WL 5900973, at *7 (C.D. Cal. Nov. 21, 2012); *Monroe Cnty. Emps'. Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 352 (S.D.N.Y. 2014) (limitations period began when "risk of nationalization" became public, not when nationalization actually occurred). Thus, regardless of when the risk eventually materialized, investors were on notice of the risk as of the 2018 Annual Report.

Third, Plaintiff asserts the 2018 Annual Report was insufficient to trigger the limitations period because, in stating that such advances had been "formally documented" and that the "amount due from Jimu . . . had dropped from $69.1 million at year-end 2018 to $22.5 million," Pintec allegedly "downplayed the materiality of the advances [to Jimu]." (Opp. at 11–12.) But Plaintiff nowhere alleges that the above-quoted statements were inaccurate. Moreover, far from "suggest[ing] that [the transactions were] no longer a material risk," *Monroe Cnty. Emps'. Ret. Sys.*, 15 F. Supp. 3d at 352–53, Pintec warned that (i) "credit exposure to Jimu [was] significant";

---

[3] Indeed, Plaintiff's claim is not even based on the alleged failure to disclose such losses, which were not and could not have been known at the time of the IPO, but on the even more attenuated theory that Pintec omitted to disclose internal controls weaknesses that purportedly led to such losses. (*See, e.g.*, AC ¶ 125.)

3

(ii) the inability to collect would "adversely affect[]" its business; and (iii) internal controls issues "may lead to significant misstatements . . . in the future" (Ex. C at 8, 24). In other words, it "warn[ed] investors not to be overly reassured." *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 302 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015).[4]

## II.    PLAINTIFF FAILS TO ALLEGE A MATERIAL MISREPRESENTATION

### A.    Pintec Disclosed The Relevant Internal Controls Risks

Pintec's disclosures warned of the *precise* risks that form the crux of the Complaint, namely, that Pintec might "identify additional material weaknesses" or "restate our financial statements from prior periods." (Ex. A at 42–43.) Although Plaintiff argues such warnings were "insufficient when [the risk had] already materialized," he alleges no facts to show that the risk—*i.e.*, the identification of additional issues or restatement of financials—had materialized **prior to the IPO**. (Opp. at 14.) Indeed, his claim that even Pintec's auditor did not detect the issues further supports an inference that the issues of which Plaintiff complains did not become known until after the IPO. (*Id.* at 8.) Hence, "this case is unlike the materialization of risk cases cited by plaintiffs, in which the adverse effects at issue had in fact been realized." *Nurlybayev v. ZTO Express (Cayman) Inc.*, No. 17 CV 6130-LTS-SN, 2021 WL 1226865, at *7 (S.D.N.Y. Mar. 31, 2021).[5]

Plaintiff argues that because the Jimu and Plutux transactions pre-dated the IPO, the internal control issues had "already manifested." (Opp. at 15.) However, "defendants' purported awareness of the underlying [transactions], even if established, would not imply their knowledge

---

[4]    This distinguishes Plaintiff's cited cases where investors were not alerted to further risks. *See, e.g.*, *Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 479–80 (S.D.N.Y. 2010).

[5]    *See In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 392 (S.D.N.Y. 2007) (alleging existing "*knowledge* of a *systemic failure*" that was reported to management); *Horowitz*, 2021 WL 1224517, at *3 (alleging "*pervasive* and *obviously illegal* wrongdoing that was *ongoing at the time of the*" IPO); *Slayton v. Am. Express Co.*, 604 F.3d 758, 770 (2d Cir. 2010) (defendant "*knew* of the major and specific risk . . . and yet did not warn of it"); *Meyer v. Jinkosolar Hldgs. Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (allegations supported an inference that problems were *known before the IPO*).

4

that those [transactions] had caused a material weakness." *Lachman v. Revlon, Inc.*, 487 F. Supp. 3d 111, 135 (E.D.N.Y. 2020). This is particularly true where, as here, the Offering Documents specifically warned that the Company had "not completed an assessment of the effectiveness of [its] internal control," and that if it had, "additional control deficiencies may have been identified." (Ex. A at 42, 113.) *See Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 177 (E.D.N.Y. 2017) (prospectus not misleading where it "explicitly acknowledged that Etsy's compliance practices were imperfect"), *aff'd*, 731 F. App'x 35 (2d Cir. 2018).

Unable to allege anything that Pintec knowingly withheld from investors or even neglected to disclose, Plaintiff argues that the Offering Documents were nonetheless defective because the alleged undisclosed facts, although unknown to Pintec, were "knowable." (Opp. at 16.) That is not the law. Rather, "[t]he relevant inquiry under the Securities Act is . . . whether the facts alleged in the Complaint evince that the Company ***knew or had reason to believe***, at the time [of the IPO], that the statement was untrue." *Coronel v. Quanta Cap. Hldgs. Ltd.*, No. 07 CIV. 1405 (RPP), 2009 WL 174656, at *13 (S.D.N.Y. Jan. 26, 2009) (no misstatement even where defendant could have accurately estimated losses from pre-IPO natural disasters); *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008) (rejecting claim based on "the much-later materialization of a quality control problem" regarding a defect that existed, but was unknown prior to the IPO). Because the Complaint contains no well-pled allegations showing that Pintec had reason to know that its statements were false before the IPO, he fails to state a claim.[6]

Moreover, in trying to argue around the one-year statute-of-limitations, Plaintiff concedes the alleged internal control issues were not material. (Opp. at 12.) He asserts that if the 2018

---

[6] Plaintiff's claim that "scienter is not an element of §11" also misses the point. (Opp. at 15.) Knowledge is required, not to plead scienter, but to show that the statements about future events differed from management's understanding of the facts at the time of the IPO. *Coronel*, 2009 WL 174656, at *13.

5

Annual Report that disclosed the internal control issues had revealed a material omission, "one would also expect an impactful market reaction. Instead, Pintec ADSs rose on its filing." (*Id.*) Because "Securities Act plaintiffs must plead the materiality of the alleged" omission, *In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 (RJS), 2012 WL 4471265, at *24 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014), he pleads himself out of court by admitting that the alleged omissions were immaterial.[7]

### B. Pintec Disclosed Its Cash Advances To Jimu

Plaintiff's claim that Pintec "fail[ed] to disclose that [it] made tens of millions of dollars in undocumented loans to Jimu" fares no better than his internal controls allegations. (Opp. at 16.) Pintec's cash advances to Jimu were clearly disclosed in the Offering Documents in a line item called "[n]et cash advances from/(repayment to) Jimu Group." (Ex. A at 183.) *Etsy*, 242 F. Supp. 3d at 180 ("defendants cannot be held liable for failing to disclose something that they disclosed").

Apparently recognizing this failure, Plaintiff backtracks from his Complaint's non-disclosure allegation (AC ¶¶ 83–84), and now argues instead this line item was *insufficient* to warn that "Pintec made *undocumented*, non-routine advancements." (Opp. at 18 (emphasis in original).) However, Plaintiff fails to allege any facts to support his new conclusory assertion that the cash advances were "undocumented, unauthorized, lacking basic terms, and not subject to recoverability assessment."[8] (*Id.*) Numerous facts alleged in the Complaint establish the contrary.

---

[7] Plaintiff's Item 303 claim similarly fails because he does not allege that the control issues were presently "known to management" or reasonably likely to "materially impact" financials. 17 C.F.R. § 229.303. Plaintiff also makes no attempt to explain why the risk disclosures described above violate Item 105 (formerly Item 503).

[8] Plaintiff's mischaracterizations of Pintec's later disclosures lend no support to his claims. (Opp. at 18 n.16.) Pintec's statement that it "lack[ed] . . . *effective* controls" does not mean it had *no* controls; the fact it saw "significant challenges" in assessing recoverability does not mean assessment was "impossible"; and "outside the ordinary course of business" refers to ad hoc adjustments relating to the reorganization, not failure to comply with the Company's ordinary approval process. (*Id.*; Ex. C at 24; Br. at 19 n.9.)

(*E.g.*, AC ¶ 135 (alleging cash advances were documented under related-party transactions as "[n]et cash advances from/(repayment to) Jimu Group"), ¶ 122 (alleging Pintec's Audit Committee "review[ed] and approv[ed] all proposed related-party transactions").)[9]

### C. Pintec Had No Duty To Disclose The Plutux Loan

Plaintiff argues that not identifying the "unsecured loan to Plutux as [a] material weakness[] at the time of the IPO was materially misleading." (Opp. at 14.) But he fails to identify any actual statement in the Offering Documents that is rendered misleading by this alleged omission. Nor does he identify any affirmative duty to disclose this issue. Accordingly, Plaintiff fails to state a claim based on the Plutux loan. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[A]n omission is actionable . . . only when the corporation is subject to a duty to disclose.").[10]

### D. Plaintiff Fails To Allege A Misrepresentation Regarding Revenue Recognition

The Opposition fails to show that Pintec's revenue recognition statements were false or misleading. First, although Plaintiff claims that the Offering Documents "indicate Pintec recorded technical service fees revenues . . . on a ***gross*** basis," he cannot point to any statement in the Offering Documents that actually says this. (Opp. at 18; AC ¶¶ 142–44). Plaintiff "cannot base a Section 11 claim on implicit promises read into" Pintec's disclosures. *In re Coty Inc. Sec. Litig.*, No. 14-CV-919 (RJS), 2016 WL 1271065, at *9 (S.D.N.Y. Mar. 29, 2016); *Goldsmith v. Weibo Corp.*, C.A. No. 17-4728 (SRC), 2018 WL 2733694, at *9 (D.N.J. June 7, 2018) (claim "based on

---

[9] Plaintiff also admits that by July 2019, the amount due from Jimu "had dropped from $69.1 million at year-end 2018 to $22.5 million" in RMB-denominated loans. (Opp. at 11.) The 2018 Annual Report also states that these RMB-denominated loans "were fully settled," and Jimu "also has repaid [Pintec] the loan principal and related interest of the U.S. denominated loan with the aggregate amount of . . . US$3.1 million[]." (Ex. C at F-60.)

[10] In a footnote, Plaintiff asserts that Pintec had a duty to disclose "material weaknesses and trends." (Opp. at 14 n.8.) But Plaintiff does not contest that the full repayment of the Plutux loan rendered the loan terms immaterial, and Plaintiff's quibble that Plutux obtained more favorable repayment terms than it deserved concerns post-IPO events that Pintec is not alleged to have known about at the time of the IPO and could not have disclosed earlier.

7

purported statements that a defendant did not actually make fails, necessarily, to state a claim upon which relief can be granted"). Second, because Plaintiff fails to allege that Pintec was required to disclose the revenue basis for its technical service fees or the so-called "service cost" charges by Jimu, these claims fail. *See Time Warner*, 9 F.3d at 267 ("an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts").

Plaintiff is also wrong that Pintec's restatement alone evidences a prior misstatement. (Opp. at 19.) To begin with, the Offering Documents' warning that Pintec may "be required to restate [its] financial statements *from prior periods*" squarely forecloses this claim. (Ex. A at 43.) Moreover, because Section 11 imposes liability only for misrepresentations of fact, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015), courts have found it necessary to distinguish between restatements concerning *facts* versus *opinion*, with no liability attaching to the latter. *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *15 (S.D.N.Y. Sept. 9, 2019).[11] Here, Plaintiff fails to allege that Pintec's restatement was of the factual variety, as the Complaint fails to identify an accounting principle that "objectively was the *only* correct guidance to apply." *Id.* at *16. Hence, Plaintiff's "proposed inference that [Pintec's] accounting standards were objectively impermissible simply because the restatement[] applied different standards" is unwarranted.[12] *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2020 WL 2787117, at *2 (S.D.N.Y. Apr. 20, 2020).

---

[11] Plaintiff's cases are inapposite, as the restatements in those cases all concerned *factually* incorrect statements. *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 545 (S.D.N.Y. 2017) (restating financials that were misstated as a result of misconduct); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 225 (S.D.N.Y. 2006) (same); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) (restating inflated financials caused by inability to locate records at the time of original disclosure).

[12] Plaintiff is wrong that Pintec "admitted" GAAP required reporting on a gross basis. (Opp. at 19 n.20.) The restatement does not discuss GAAP and notes only that the gross basis is, upon reflection, the better approach because "the Company was acting as principal." (AC ¶ 206.) This shows that the standard Pintec later utilized was not required "in an objective and singular way," but was subject to a condition precedent (*i.e.*, Pintec acting as principal). Whether or not an actor was "acting as a principal" is, of course, itself a question of judgment, and
(cont'd)

8

Finally, Plaintiff cannot show that the restatement was material. (Opp. at 20–21.) His focus on the increase in costs of revenues ignores that the materiality inquiry looks at "the *total mix of information* made available." *In re XP Inc. Sec. Litig.*, No. 20-CV-1502 (BMC), 2021 WL 861917, at *7 (E.D.N.Y. Mar. 8, 2021); *see also id.* at *8 ("It is the absolute effect on the company, not the relative change, that determines materiality."). Plaintiff's concession that the restatement had **no impact** on Pintec's bottom line is thus fatal to his claim. (Opp. at 20.)

### E. Plaintiff Fails To Plead Other Financial Statements Were Misleading

The Opposition's laundry list of accounting entries that Plaintiff claims are erroneous likewise cannot save the Complaint from dismissal. Like the Complaint, the Opposition makes no attempt to explain why these entries were false or material.[13] (Opp. at 21–22.) Instead, Plaintiff asserts that the question is beyond dispute because Pintec stated that its prior statements were "erroneous[]." (Opp. at 21.) But as with revenue recognition, these are at most inactionable "errors of opinion, not of fact." *AmTrust I*, 2019 WL 4257110, at *15. (*See supra* § II.D.)

Tellingly, in the few instances where the Opposition even attempts to address the actual financial disclosures, it gets the numbers wrong. For example, Plaintiff alleges that for FY2017, "Pintec restated its cash position from ¥194.4 million . . . to ¥164.862 million." (Opp. at 21.) But he cited the wrong figure, and Pintec's cash position, as measured by the bottom-line item "Cash, cash equivalents and restricted cash at end of the year," **remained the same** at RMB375.891

---

Plaintiff does not allege or argue otherwise. Nor does Pintec's statement that its prior treatment was "erroneous" show an actionable misstatement, as "'errors' [that] result[] from 'management's interpretation of accounting guidance,' . . . are errors of opinion, not of fact." *AmTrust I*, 2019 WL 4257110, at *15.

[13] Accounts receivable, long-term financing receivables, and long-term funding debts all remained the same; short-term financing receivables were overstated by RMB11.05 million, representing only 0.47% of total assets; and short-term funding debts was understated by RMB15 million, or only 0.11% of total liabilities. (Ex. G at F-71.) *See ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009) (0.3% in total assets was not material).

million after the restatement.[14]  (Ex. G at F-77.)  Similarly, instead of comparing figures from before and after the restatement for the stub period of 2018, he compared figures from *different* periods, *i.e.*, the periods ended June 30, 2017 and June 30, 2018.[15]

### III.  LACK OF CAUSATION IS APPARENT ON THE FACE OF THE COMPLAINT

Finally, dismissal is warranted because lack of causation is apparent on the face of the Complaint.  First, Plaintiff does not dispute that he sold all of his shares before Pintec's June 2020 disclosures and thus no discovery is necessary for dismissal.  (*See* Opp. at 24–25.)  *See Schuler v. NIVS Intellimedia Tech. Group, Inc.*, No. 11 Civ. 2484 (KMW) (FM), 2013 WL 944777, at *9 (S.D.N.Y. Mar. 12, 2013) (negative causation apparent where plaintiff sold shares before the misrepresentation was revealed).  Second, Plaintiff admits the price of Pintec's ADSs actually *increased* when the 2018 Annual Report—the only other alleged "corrective disclosure"—was released.  (Opp. at 12.)  Third, Plaintiff has no answer to the argument that Pintec's 70% "price decline before [the 2018 Annual Report] may not be charged to defendants." *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995).  (*See* Br. at 24.)  Thus, because "it is clear from the face of the pleadings that plaintiff suffered no damages following the relevant corrective disclosure," Plaintiff's Section 11 claim must be dismissed.  *Amorosa v. Ernst & Young LLP*, 672 F. Supp. 2d 493, 514 (S.D.N.Y. 2009).

### CONCLUSION

As shown here and in the Opening Brief, the Complaint should be dismissed with prejudice.

---

[14]  Pintec reclassified certain amounts among the different line items, and the decrease in net cash provided by operating and financing activities was completely offset by the increase in cash available at year's beginning and cash saved from investing activities, resulting in no change in total cash position.  (Ex. G at F-77.)

[15]  For example, he alleges that "Pintec restated its net cash provided by/(used in) operating activities . . . from ¥71,295 to (¥15,626)." (Opp. at 22.)  However, RMB71,295 is the figure for the six months *ended June 30, 2017* and (RMB15,626) is the figure for the six months *ended June 30, 2018*.  (AC ¶ 161.)  The other bullet points replicate the same error.  (Opp. at 21–22.)

Dated: New York, New York
July 15, 2021

Respectfully submitted,

/s/ Robert A. Fumerton
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Attorneys for Defendant Pintec Technology Holdings Limited*

/s/ Douglas H. Flaum (with consent)
Douglas H. Flaum
Molly L. Leiwant
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
dflaum@goodwinlaw.com
mleiwant@goodwinlaw.com

*Attorneys for Defendants Goldman Sachs (Asia) L.L.C., Deutsche Bank Securities Inc. and Citigroup Global Markets Inc.*